1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,
                                        NO. CIV. S-04-2470 LKK/KJM
11          Plaintiff,

12       v.

13   REAL PROPERTY LOCATED AT 11550              O R D E R
     MUSHROOM TRAIL, GRASS VALLEY,
14   NEVADA COUNTY, CALIFORNIA,
     APN:  53-130-31, INCLUDING ALL
15   APPURTENANCES AND IMPROVEMENTS
     THERETO,
16
            Defendant.
17   _____/
     DAVID McELVAIN,
18
            Claimant.
19   _____/

20       Pending before the court is a motion for summary judgment

21   filed by plaintiff, the United States of America.  This case

22   involves the forfeiture of real property allegedly used to

23   cultivate marijuana.  Plaintiff seeks summary judgment on the

24   grounds that marijuana was knowingly cultivated by David McElvain

25   on the real property in question.  For these reasons, plaintiff

26   maintains, the property is subject to forfeiture under the law.

                                  1

**I.**

**FACTS[1]**

Claimant David McElvain is the sole owner of the defendant real property. Pl.'s SUF, 1. Claimant admits that Thomas Kyle Williams was manufacturing marijuana at the property on or about September 17, 2004, with claimant's knowledge. Pl.'s SUF, 2. Claimant also admits that Zachary Rasmussen was manufacturing marijuana at the property on or about September 17, 2004, with claimant's knowledge. Pl.'s SUF, 4.

Claimant also admits that at the time of the execution of the search warrant at the property on September 17, 2004, approximately 250 marijuana plants were growing on the defendant real property. Pl.'s SUF, 6.

Finally, claimant admits that from June of 2004 through September, 17, 2004, cannabis plants were grown on the defendant property, although claimant asserts that the plants were grown for "lawful, medicinal purposes." Pl.'s SUF, 7.

**II.**

**STANDARDS FOR SUMMARY JUDGEMENT UNDER FED. R. CIV. P. 56**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Sicor Limited v. Cetus Corp., 51 F.3d 848, 853 (9th

---

[1] These facts are undisputed unless otherwise noted.

1   Cir. 1995).

2       Under summary judgment practice, the moving party

3           [A]lways bears the initial responsibility of
            informing the district court of the basis for
4           its motion, and identifying those portions of
            "the pleadings, depositions, answers to
5           interrogatories, and admissions on file,
            together with the affidavits, if any," which
6           it believes demonstrate the absence of a
            genuine issue of material fact.

7

8   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the

9   nonmoving party will bear the burden of proof at trial on a

10  dispositive issue, a summary judgment motion may properly be made

11  in reliance solely on the 'pleadings, depositions, answers to

12  interrogatories, and admissions on file.'" Id. Indeed, summary

13  judgment should be entered, after adequate time for discovery and

14  upon motion, against a party who fails to make a showing sufficient

15  to establish the existence of an element essential to that party's

16  case, and on which that party will bear the burden of proof at

17  trial. See id. at 322. "[A] complete failure of proof concerning

18  an essential element of the nonmoving party's case necessarily

19  renders all other facts immaterial." Id. In such a circumstance,

20  summary judgment should be granted, "so long as whatever is before

21  the district court demonstrates that the standard for entry of

22  summary judgment, as set forth in Rule 56(c), is satisfied." Id.

23  at 323.

24      If the moving party meets its initial responsibility, the

25  burden then shifts to the opposing party to establish that a

26  genuine issue as to any material fact actually does exist.

                                    3

1  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

2  586 (1986); See also First Nat'l Bank of Ariz. v. Cities Serv. Co.,

3  391 U.S. 253, 288-89 (1968); Sicor Limited, 51 F.3d at 853.

4  　　　In attempting to establish the existence of this factual

5  dispute, the opposing party may not rely upon the denials of its

6  pleadings, but is required to tender evidence of specific facts in

7  the form of affidavits, and/or admissible discovery material, in

8  support of its contention that the dispute exists.  Fed. R. Civ.

9  P. 56(e); Matsushita, 475 U.S. at 586 n.11; See also First Nat'l

10  Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir.

11  1998).   The opposing party must demonstrate that the fact in

12  contention is material, i.e., a fact that might affect the outcome

13  of the suit under the governing law, Anderson v. Liberty Lobby,

14  Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Assoc. of

15  Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992)

16  (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,

17  809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine,

18  i.e., the evidence is such that a reasonable jury could return a

19  verdict for the nonmoving party, Anderson, 477 U.S. 248-49; see

20  also Cline v. Industrial Maintenance Engineering & Contracting Co.,

21  200 F.3d 1223, 1228 (9th Cir. 1999).

22  　　　In the endeavor to establish the existence of a factual

23  dispute, the opposing party need not establish a material issue of

24  fact conclusively in its favor.  It is sufficient that "the claimed

25  factual dispute be shown to require a jury or judge to , 04-

26  1993resolve the parties' differing versions of the truth at trial."

1   First Nat'l Bank, 391 U.S. at 290; See also T.W. Elec. Serv., 809

2   F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

3   the pleadings and to assess the proof in order to see whether there

4   is a genuine need for trial.'"  Matsushita, 475 U.S. at 587

5   (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

6   amendments); see also International Union of Bricklayers & Allied

7   Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401,

8   1405 (9th Cir. 1985).

9       In resolving the summary judgment motion, the court examines

10  the pleadings, depositions, answers to interrogatories, and

11  admissions on file, together with the affidavits, if any.  Rule

12  56(c); See also In re Citric Acid Litigation, 191 F.3d 1090, 1093

13  (9th Cir. 1999).  The evidence of the opposing party is to be

14  believed, see Anderson, 477 U.S. at 255, and all reasonable

15  inferences that may be drawn from the facts placed before the court

16  must be drawn in favor of the opposing party, see Matsushita, 475

17  U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654,

18  655 (1962) (per curiam)).  Nevertheless, inferences are not drawn

19  out of the air, and it is the opposing party's obligation to

20  produce a factual predicate from which the inference may be drawn.

21  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45

22  (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

23      Finally, to demonstrate a genuine issue, the opposing party

24  "must do more than simply show that there is some metaphysical

25  doubt as to the material facts. . . . Where the record taken as a

26  whole could not lead a rational trier of fact to find for the

5

1  nonmoving party, there is no 'genuine issue for trial.'"
2  Matsushita, 475 U.S. at 587 (citation omitted).

**III.**

**ANALYSIS**

5       Plaintiff argues that no genuine issue of material fact exists
6  and thus it is entitled to judgment in its favor as a matter of
7  law.  In opposition to plaintiff's motion, claimant argues that
8  judgment should not be granted because there are two disputed
9  facts: (1) whether the property is subject to forfeiture when the
10 property was being used in conformity with state law; and (2)
11 whether forfeiture violates the Eighth Amendment's prohibition of
12 excessive fines.  For the reasons set forth below, the court must
13 deny summary judgment.

**A.    PRINCIPLES OF CIVIL FORFEITURE**

15      Plaintiff's suit for forfeiture arises under the Controlled
16 Substance Act ("CSA"), 21 U.S.C. § 881 .  Specifically, Section
17 881(a)(7) subjects to civil forfeiture real property used to commit
18 or facilitate a drug-related felony.[2]  Meanwhile, 21 U.S.C.
19 § 841(b)(1)(B) provides for a sentence of not less than five years
20 and not more than 40 years for cases involving more than 100
21 marijuana plants.  Taken together, these provisions of the CSA

---

[2]  The statute provides for forfeiture of:

all real property . . . used, or intended to be used, in
any manner or part, to commit, or to facilitate the
commission of, a violation of this subchapter punishable
by more than one year's imprisonment.

21 U.S.C. § 881(a)(7).

6

1  authorize the forfeiture of land that has been used to cultivate
2  over 100 marijuana plants.

3       On April 25, 2000, Congress passed the Civil Asset Forfeiture
4  Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202.
5  Two general provisions of CAFRA are relevant to the case at bar.
6  First, the government now has the burden of proving by a
7  preponderance of the evidence that the property is subject to
8  forfeiture.  18 U.S.C. § 983(c)(1).  Second, a claimant may
9  petition the court to determine whether the forfeiture was
10 constitutionally excessive.  Id. at § 983(g).

11 **B.   WHETHER THE PROPERTY AT ISSUE IS SUBJECT TO FORFEITURE**

12      For the reasons set forth below, the court finds that there
13 is a disputed issue of material fact as to whether the property in
14 question is properly subject to forfeiture under the CSA.

15      First, the court notes that at time claimant's land was
16 searched and the marijuana plants discovered, it was legal under
17 the California Compassionate Use Act to grow a certain quantity of
18 marijuana for medical purposes.  Moreover, in 2003, the Ninth
19 Circuit held that the CSA is unconstitutional as it exceeds
20 Congress' powers under the Commerce Clause and thus, cannot preempt
21 the California Companionate Use Act.  Raich v. Ashcroft, 352 F.3d
22 1222 (9th Cir. 2003)  Although the Ninth Circuit's decision was
23 later overruled by the Supreme Court in 2005, claimant avers that
24 at the time he decided to cultivate medical marijuana, he was
25 relying on the Ninth Circuit's Raich decision, which had not yet
26 been questioned by the Supreme Court.

1    Under the California Companionate Use Act, a qualified patient

2  may grow no more than "six mature or 12 immature marijuana plants

3  per qualified patient."  Cal. Health & Safety Code § 11362.77.  If

4  a patient has a doctor's recommendation that this quantity does not

5  meet the patient's need, the patient may posses an amount

6  consistent with his or her need. Id.  Claimant maintains that he

7  was growing marijuana in compliance with the Compassionate Use

8  Act.[3]

9    If claimant was in fact complying with California law at the

10 time the marijuana plants were discovered, then the real property

11 may not have been subject to forfeiture pursuant to the CSA.

12    Implicit in the court's holding is that the Supreme Court's

13 decision in Raich is not retroactive.  It is well established that

14 courts, like legislatures, may not create ex post facto rules of

15 criminal law.  Bouie v. City of Columbia, 378 U.S. 347, 354 (1964).

16 As the Bouie Court explained there "can be no doubt that a

17 deprivation of the right of fair warning can result not only from

18 vague statutory language but also from an unforeseeable and

19 retroactive judicial expansion of narrow and precise statutory

20 ////

21 ////

22

23    [3]  Plaintiff maintains that the Ninth Circuit's decision in
   Raich conflicted with the Supreme Court's decision in United States
24 v. Oakland Cannabis Buyer's Cooperative, 532 U.S. 438, 491-2
   (2001).  The court cannot agree.  As the Ninth Circuit in the Raich
25 case explained, the "relevant portion of [the Oakland Cannabis]
   case dealt with what factors a district court may consider when
26 fashioning injunctive relief," Raich, 352 F.3d at 1234, and thus
   Oakland Cannabis is inapplicable to the matter at bar.

1  language." Id. at 352.[4]

2     The consequence of the Supreme Court's Raich decision was that

3  it made something that was legal under California law, and not

4  illegal under federal law by virtue of the Ninth Circuit's ruling

5  in Raich, (growing marijuana for medical purposes), no longer

6  legal. See Gonzales v. Raich, 125 S.Ct. 2195 (2005). Thus, the

7  decision clearly constituted "judicial enlargement of a criminal

8  act." Bouie, 378 U.S. at 352. For this reason, applying the

9  Supreme Court's Raich decision retroactively would violate

10 claimant's due process right to fair notice. Bouie, 378 U.S. 347,

11 354 (1964).[5]

12    Having established that at the time claimant's land was

13 searched, it was legal to grow medical marijuana under California

14 law, the court turns to the question of whether claimant was in

15 fact growing marijuana in a way that complied with the California

16 Compassionate Use Act. If claimant was complying with the

17

18     [4] Plaintiff maintains that because this is a civil proceeding
   ex post facto principles are not relevant. The court cannot agree.
19 Although forfeiture is a civil proceeding, whether growing medical
   marijuana violates the CSA is an issue of criminal law and thus ex
20 post facto principles are applicable.

21     [5] The court must also rejects plaintiff's argument that the
   change in law was foreseeable, and thus due process is not violated
22 by the retroactive application of the Supreme Court decision. In
   United States v. Qualls, 172 F.3d 1136 (9th Cir. 1999), the Ninth
23 Circuit explained that a change in the law is foreseeable when
   circuits are split on the proper construction of a statute. Id at
24 1139. Here, plaintiff fails to establish the existence of a
   circuit split with respect to the question of whether there is a
25 medical marijuana exception to the CSA. The citations relied on
   by plaintiff do not address medical marijuana and thus are
26 irrelevant.

Compassionate Use Act, then the land may not have been subject to forfeiture.  However, if claimant was not complying with the Compassionate Use Act, then the forfeiture would appear to be proper under the CSA.

It appears to the court that there is a dispute over whether the marijuana grown on claimant's property was in fact grown in compliance with the Compassionate Use Act.  Claimant maintains that there were valid prescriptions for all the marijuana grown on the land,[6] whereas plaintiff argues that claimant and his acquittances were using the land for a marijuana collective or club, which is not permitted under the Compassionate Use Act.[7]

Given that there is a disputed issue of material fact (whether the marijuana was cultivated in compliance with the Compassionate Use Act), summary judgment for plaintiff must be and is DENIED.[8]

_____

[6]  Claimant avers that marijuana was being grown on the land pursuant to seven legal prescriptions and each prescription was for a different person.  See Cl.'s Opp'n Ex. 1.

[7]  It is established that the Compassionate Use Act does not authorize cooperative marijuana cultivation and distribution. People v. Urziceanu, 132 Cal.App.4th 747, 768-769 (3rd Dist. 2005) (The Compassionate Use Act was "designed for a single patient to grow and possess his or her own marijuana.")

[8]  Should it be determined that claimant was not in compliance with state law, and that forfeiture was therefor legal under the CSA and the CAFRA, the court will be required to determine if forfeiture is excessive.  Specifically, under Section 983(g) of CAFRA, a claimant may petition the court "to determine whether the forfeiture was constitutionally excessive."  18 U.S.C. § 983(g). The claimant has the burden of establishing that the "forfeiture is grossly disproportional by a preponderance of the evidence at a hearing conducted by the court without a jury."  Id.  Since it has not yet been established if the forfeiture was in fact appropriate, the court need not analyze the excessive fines issue at this time.

10

1    The Pretrial Conference is CONFIRMED for February 6, 2006 at

2  2:30 p.m., with trial set to commence on May 9, 2006 at 10:30 a.m.

3    IT IS SO ORDERED.

4    DATED:  January 18, 2006.

5                                    /s/Lawrence K. Karlton
                                     LAWRENCE K. KARLTON
6                                    SENIOR JUDGE
                                     UNITED STATES DISTRICT COURT
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26